United States District Court for the Western District of Texas
Austin Division

| | |
|---|---|
| Albian Leyva,<br>          Plaintiff,<br><br>v.<br><br>Ryan Hartman and<br>City of San Marcos,<br>          Defendants. | §<br>§<br>§   Case no. 1:22-cv-580<br>§<br>§<br>§<br>§<br>§ |

**Complaint**

## I. Introduction

This is a lawsuit about former San Marcos Police Sergeant Ryan Hartman who tased Albian Leyva for no reason in January 2021. Hartman is infamous in central Texas for killing Jennifer Miller and catastrophically injuring her partner Pam Watts in an off-duty, alcohol-related wreck in June 2020.

This lawsuit is also about the City of San Marcos's appalling inattention to this DUI-related homicide by one of its police supervisors. The San Marcos Police Department did next to nothing in response to Sergeant Hartman's deadly crime. He was allowed a lengthy, paid sabbatical and returned to work in December 2020 as if he had never killed Jen while driving with an open container.

Six weeks after Hartman returned to fulltime work at SMPD, he exercised the extraordinary impunity gifted to him by SMPD's failure to supervise him and tased Al for no reason during a traffic stop.

If San Marcos leadership had bothered to scrutinize Hartman's clear lack of judgment to be a police officer, Hartman would not have been a San Marcos police officer and would not have tased Al in January 2021.

## II. Parties

1. Albian Leyva is a resident of San Marcos. Al had never once been in trouble with law enforcement before the tasing incident and he has not been in trouble since the incident.

2. Ryan Hartman is a resident of San Marcos. Hartman killed Jen Miller in June 2020 in a fatal car wreck. He was speeding, ran a stop sign, and had an open container in his truck.

3. The City of San Marcos is a Texas municipal corporation in the Western District of Texas.

## III. Jurisdiction

4. This Court has federal question subject matter jurisdiction over this 42 U.S.C. § 1983 lawsuit under 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over Hartman because he lives and works in Texas. The City is subject to general personal jurisdiction because it is a Texas municipality.

6. This Court has specific personal jurisdiction over Hartman and the City because this case is about their conduct that occurred in San Marcos, Texas.

## IV. Venue

7. Under 28 U.S.C. § 1391(b), the Western District of Texas is the correct venue for this lawsuit because the relevant events occurred in San Marcos.

## V. Facts

8. Ryan Hartman is not qualified to be a police officer, much less a police supervisor.

9. In June 2020, Hartman was speeding and ran a stop sign, killing Jennifer Miller who had the right of way. First responders documented Hartman's open, nearly finished Dos Equis tallboy and his confession taking responsibility for Jen's fatality at the scene.

10. The City of San Marcos gave Hartman a paid sabbatical from his work as a police sergeant after he killed Jen. SMPD did not investigate Hartman's criminally negligent homicide. Despite Hartman's clear lack of judgment and his unfitness to be a police officer, San Marcos leadership returned Hartman to fulltime police work on December 1, 2020. The City of San Marcos paid Hartman approx. $38,000 during his sabbatical.

11. Six weeks after his sabbatical ended, on January 12, 2021, Hartman participated in an SMPD traffic stop. The Plaintiff in this case, Al Leyva, was a passenger in the back seat of the car that was pulled over.

12. Internal City of San Marcos documents describe the circumstances leading up to Hartman's unnecessary use of force as follows:

13. "Albain [sic] Leyva was the back-right passenger and he exited the vehicle with his empty hands raised approximately shoulder height. The top of a flat and black in color object was exposed in Leyva's back right jeans pocket. Perkins began giving Leyva commands almost immediately telling Leyva to get on his knees."[1]

14. "Leyva complied and walked approximately 8 feet to the right of the car to the sidewalk and began taking off his jacket in a deliberate manner. Perkins gave Leyva commands to show his hands as they were briefly obscured by the jacket's sleeve as Leyva removed the jacket. As Leyva arrived at the side walk, Leyva allowed his jacket to swing onto the ground as he kneeled. This happened in a matter of

---

[1] SMPD Memorandum from C. Wood to L. Leonard (May 24, 2021).

2

~3 seconds. While Perkins was attempting to give Leyva directions, Sgt. Hartman began to shout directions at Leyva to 'come back over this way. Come over to me.' conflicting with Perkins verbal commands to get on his knees."

15. "While Leyva knelt facing away from Perkins and Hartman, he raised his hands to shoulder height making them visible again to comply with Perkins. Hartman began to give Leyva verbal commands. Sgt. Hartman's voice commands sound much louder on both his and Perkins body cams than Perkins's commands as he commands Leyva 'Passenger, back up to the sound of my voice. Stand up.'"

16. "Leyva does not rise but with his right hand retrieves the object from his back pocket and brings it in front of him to waist level and appears to begin to manipulate it obscured from the officers. Sgt. Hartman tells Leyva 'Show us your hands. Do it now.' For approximately 5 seconds, Leyva continues to appear to manipulate the object in front of him as now Perkins commands Leyva to show his hands. Leyva complies by returning the object to his back-right pocket while simultaneously raising that hand as well."

17. "As Leyva was returning the object to his pocket, he purposefully drops a small, thin object near his right knee. This object made a sound which, having time to review the video, is consistent with an ID card. Leyva had been retrieving his ID card preemptively from his wallet which was in his back-right pocket. Sgt. Hartman tells Leyva to 'Stand up' and Leyva does so quickly and compliantly."

18. "As Leyva stands, he retrieves his ID from the ground which causes both Hartman and Perkins to verbally address his reaching. Leyva complies and lifts both hands showing his ID in his right hand. Hartman commands Leyva 'Hands up!' and twice to 'Face away from me.' Perkins is loudly commanding 'Come over here' about the same time. This prompts Garcia to ask Perkins if he is talking to him. Perkins then begins shouting at Garcia to be quiet as Leyva is left standing stationary facing officers."

19. "Leyva replies 'Y'all don't need to do this.' while dropping his hands, transferring the ID very briefly to his left hand, and then raising his hands up again to comply. He then transfers the ID back to his right hand and uses his left hand to reach into his left front pocket where he retrieves his phone."

20. "He begins to use his phone at face level in his right hand to possibly video officers. Garcia, meanwhile is still belligerent on the ground not in custody on the driver's side of the car, continues to be verbally disruptive. Sgt Hartman, in a lower volume tells Officer Begwin or Perkins, 'Put your light on him. I'm going to tase this guy.' Officer Melendrez, without an operational body cam asks 'Want to Tase him?' Hartman replies 'Yep.'"

21. "For ~15 seconds no further directions had been given to Leyva by anyone. Leyva had been standing with both hands exposed, one holding his phone at face level and the other in view at his side, during this time."

22. "As Hartman made the decision to approach Leyva, who was still in an area adjacent to the car with open doors and occupants, Leyva had both hands up above his shoulders with his phone in right hand and ID in his left for ~ 6 seconds. Hartman, Melendrez and Begwin began to approach Leyva. Hartman yelled to Leyva 'Come to me now! Come to me now!' but a split second later deployed Taser on Leyva not giving Leyva a chance to comply. As Sgt. Hartman was yelling 'Come to me now', Melendrez calls out 'Taser! Taser!' and deploys his Taser on Leyva."

23. "No warning of possible taser deployment was provided to Leyva though there was ample time to do so."

24. "No lesser means of control was attempted despite Sgt. Hartman's large build and defensive tactics instructor status."

25. "Although Leyva was delayed in some of his concession, he was still generally compliant with officers' commands and offered only one statement 'Y'all don't have to do this.' Some of Leyva's lack of quick compliance with officer orders can easily be attributed to conflicting commands from two separate officers, Hartman and Perkins."

26. "Leyva's production of his driver's license, his non-aggressive stance, and his lack of verbal resistance should have been observed as willingness to cooperate."

27. "For approximately 15 seconds prior to being tased, Leyva's hands were in view."

28. "At the time Sgt. Hartman deployed his CED on Leyva, Leyva was not acting or verbalizing aggressively nor displaying any threat."

29. San Marcos Police Chief Stan Standridge suspended Hartman for 40 hours on July 1, 2021 for tasing Al because "there were no reasonable circumstances justifying such force."[2]

30. Hartman—who had already been allowed a lengthy paid sabbatical from June 10, 2020 through December 1, 2020—was allowed to trade 40 hours of his hundreds of hours of accrued vacation time in lieu of actually serving the suspension.

VI. **Claims**

  A. **Hartman violated Al's civil rights when he tased Al for no reason.**

31. Al brings this claim under 42 U.S.C. § 1983.

---

[2] Letter from S. Standridge to R. Hartman (July 1, 2021).

32. Hartman was acting as an SMPD police officer (*ie* under color of law) when he tased Al for no reason. Hartman tased Al even though Al did not pose the least bit of danger to anyone.

33. A reasonable human being, much less a reasonable police officer or police supervisor would know that tasing a man for no reason violates clearly established law.

34. On January 12, 2021 it was clearly established "that an officer cannot abruptly resort to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." See Betts v. Brennan, 22 F.4th 577, 585 (5th Cir. 2022).

**B. Hartman acted with such disregard for Al's humanity, this case warrants damages that will deter this type of misconduct in the future.**

35. Hartman's brazen assault of Al for no reason after bragging to his colleagues "I'm going to tase this guy" was a heinous abuse of his authority as a Texas peace officer.

36. Al seeks punitive damages to deter this type of unabashed excessive force in the future.

**C. The City of San Marcos failed to supervise Hartman.**

37. The City of San Marcos knew on January 12, 2021 that Ryan Hartman lacked the judgment necessary to be a police officer.

38. Hartman had killed a woman while driving with an open container and yet the City failed to supervise Hartman.

39. The City's policy of not conducting timely investigations into off-duty criminal conduct by its police officers was particularly egregious and harmful in this case where the off-duty misconduct was a homicide.

40. San Marcos Director of Public Safety Chase Stapp and other City officials knew about this policy and ordered SMPD Chief Standridge not to investigate.

41. If Hartman had been investigated and properly supervised, he would not have operated with such a lack of impunity on January 12, 2021.

42. This single instance of the City's failure to investigate and supervise Hartman after he killed Jen made it highly predictable that he would brazenly abuse his authority again.

43. During Hartman's reinstatement hearing in May 2022, alarming evidence about the City of San Marcos's failure to supervise numerous other SMPD officers came to light. The City has been deliberately indifferent to the inevitable consequences of the supervision crisis at SMPD for years. In other words, the City of San Marcos supervises its police officers in a manner that manifests a deliberate indifference to the constitutional rights of the people of San Marcos, including Al.

44. The City's embarrassing lack of supervision at SMPD proximately caused Al's injuries.

## VII. Damages

Al seeks recovery for all his damages including his physical pain from the tasing and her past and future mental anguish from the trauma of being tased for no reason, pre and post judgment interest, attorney's fees, expenses, and costs.

## VIII. Request for jury trial

Al requests a jury trial.

## IX. Prayer

For all these reasons, Al Leyva requests that Ryan Hartman and the City of San Marcos be summoned to appear and answer his allegations.

Respectfully submitted,
*/s/ Rebecca Webber*
Rebecca Webber
Webber Law
4228 Threadgill Street
Austin, Texas 78723
512-537-8833
rebecca@rebweblaw.com

Attorney for Plaintiff Albian Leyva